## Anna Geisert, Administratrix, Appellee, v. Nelson Morris et al., Appellants.

### Gen. No. 15,516.

1. EVIDENCE—*who not eye witness so as to preclude testimony as to habits of care.* If death results from an accident and there is no eye witness thereof habits of care of the deceased may be shown. A person who does not seè the accident in its inception but who does see it in its conclusion is not such an eye witness as will bar evidence of habits of care.

2. CONTRIBUTORY NEGLIGENCE—*when selection of more dangerous method does not establish.* Held, under the evidence, that the rule which provides that if a servant selects the more dangerous of two methods of doing work contributory negligence results as a matter of law, did not apply.

3. ORDINARY CARE—*how question to be determined.* If a servant did not know of the instrumentality which caused his death and was not in law chargeable with knowledge thereof, the question of whether he exercised ordinary care for his own safety is one of fact to be determined by the jury.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed March 16, 1911. *Certiorari* denied by Supreme Court (making opinion final).

WINSTON, PAYNE, STRAWN & SHAW, for appellants; EDWARD W. EVERETT, of counsel.

EDWARD R. LITZINGER, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

In an action on the case for negligently causing the death of plaintiff's intestate, Sigmund Meyer, plaintiff had judgment for $4,500, and defendant appealed. Defendant had in its plant a room thirty-five feet long, four feet wide and fifteen feet high, in which sausages were hung to dry. To support the sticks on which the links of sausage were placed, rails were fastened to

uprights on each side of the room, the first three feet from the floor and those above eighteen inches apart. The links of sausage were three inches apart on the sticks and the sticks were placed on the rails four inches apart. The only entrance to the room was through a door at the south end. For two months before his death Meyer was a truckman in the service of the defendant, and he and one Sieloff, with whom he worked, had about twice a week removed the sausages from the room, but had never taken any sausages into the room. The man who filled the room began at the north end, and as a rule there was a space of three or four feet left at the south end. On the day of the accident, however, there was only a space of fourteen inches between the sausages and the partition at the south end of the room. Through this partition and about nine feet above the floor the end of an uncovered iron shaft two inches in diameter projected into the room five inches and revolved rapidly and without making any noise. At the north end of the room was a large window, and near the center was a skylight four or five feet wide from north to south. There were used in the room, suspended from the ceiling, two incandescent electric lights hung on long cords. In taking sausages from the room Sieloff and Meyer had always begun at the south end and taken first the sticks in the first tier of sticks that could be reached from the floor and carried them to a truck outside of the door. When this had been done, one climbed up, placed one foot on a rail on one side of the room, the other on the opposite rail, and handed down to the other the sticks in the tier that could not be reached from the floor. Just before the accident defendant's foreman directed Sieloff and Meyer to take the sausages that were in said room to the smoke house. They took the sausages in the first tier from the door up to the third rail, which was as high as they could reach, and took them to the smoke house. Then Meyer said he would go up and lower down. Sieloff waited a short

time and then followed Meyer into the room. When he entered he saw Meyer standing on the third rails with his face towards the sausages and his back towards the partition. Sieloff passed under him and went into the room sixteen or eighteen feet. He heard a noise and a cry, ran back to the door and saw that Meyer's clothes had been caught by the shaft, and in a moment he fell into Sieloff's arms, dead.

The negligence alleged in the first count of the declaration is a breach of its duty by the defendant to use reasonable care to furnish plaintiff's intestate a reasonably safe place to work, in that the defendant negligently permitted said shaft to project through said partition and to revolve rapidly, of the existence of which shaft, etc., the defendants knew and Meyer did not know, whereby, etc. That alleged in the second count is that defendant negligently, etc., ordered Meyer to go into said room to remove sausages therefrom, when the defendant knew and Meyer did not know that said shaft projected into said room, etc., whereby, etc.

The question whether the trial court erred in permitting the plaintiff to introduce evidence that Meyer was a careful workman, in full possession of his faculties, to prove that he was exercising due care for his own safety, depends on the question whether Sieloff was an eye witness to the accident. He testified that he came into the room, saw Meyer standing on the third rails at the south end of the room, and then went into the room sixteen or eighteen feet, heard a noise and a cry, stooped down to see what was the matter and saw Meyer's feet swinging. According to his testimony he did not see Meyer from the time he passed under him until Meyer was caught by the shaft. We think that Sieloff was not an eye witness to the accident, and that the evidence was properly admitted.

We find no reversible error in the other ruling on evidence complained of, or in the refusal to give certain instructions asked by defendant other than the

peremptory instruction to find the defendant not guilty.

The question whether the peremptory instruction should have been given, and if not, whether defendant's motion for a new trial on the ground that the verdict was against the evidence should have been granted, will be considered together.

We do not think that the rule that when there are two methods of performing work, one more dangerous than the other, and the servant selects the more dangerous one and is injured by reason thereof, contributory negligence is imputed to him as a matter of law, is applicable to the facts of this case. The work in hand, the work Sieloff and Meyer were ordered to do, was to take the sausages from the room. We think it was proper for them to begin at the south end of the room and take out the sausages tier by tier. By so doing they would have, after the first two or three tiers were taken out, clear space in which to work. This was the manner in which they had always taken sausages from the room, and unless Meyer knew of, or was in law chargeable with knowledge of the presence of the projecting revolving shaft at the south end of the room, it cannot be said that he selected the more dangerous of two methods of doing the work. If he knew or was in law chargeable with knowledge of the projecting revolving shaft, his administrator could not recover for his death, for in such case he assumed the risk and was also guilty of contributory negligence. There is no direct evidence to show either that Meyer did or did not know of the presence of the shaft, and there is evidence that he was a careful man. Outside of the dry room were two pulleys on the shaft, on which belts ran, and eight or ten feet from the dry room was a motor which drove the shaft. If it be conceded that Meyer must have known that there was such a shaft outside of the dry room, we do not think that such knowledge can be held to imply knowledge by him, or charge him with knowledge that the shaft projected beyond the partition into the dry room.

It is insisted that as Meyer had assisted in taking sausages from the dry room about twice a week for two months, he must have seen, or if he had used ordinary care would have seen, the projecting shaft. When he went into the room his back would be towards the shaft. When he came out he had two sticks of sausages in his hands and naturally would look towards the floor and have no occasion to notice the partition over the door. Defendant's foreman testified that the shaft went around without making any noise. We think that the question whether Meyer knew of the projecting shaft, or would have known of it if he had exercised ordinary care when he entered the room just before the accident, was a question of fact for the jury, on which their verdict must be held conclusive against the defendant.

From the evidence the jury might properly find that the electric light nearest the south end of the room was about seven feet below the ceiling, and that there were a number of tiers of sticks of sausages between that light and the shaft. The room was filled with sausages, which must have obstructed the light from either the skylight or the north window. To lower the sausages Meyer must work with his back to the partition, and he was in that position when Sieloff last saw him. If Meyer did not know when he entered the room of the projecting shaft and was not in law chargeable with knowledge of its presence, we think the question whether in climbing upon the rails he became aware, or, if he had exercised ordinary care would have become aware, of the presence of the shaft, was also a question for the jury, on which their verdict must be conclusive against the defendant.

The record is, in our opinion, free from reversible error, and the judgment is affirmed.

*Affirmed.*